IN THE UNhITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jonathan Coburn, | ) | C/A No. 0:12-3653-JFA-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Leroy Cartledge, *Warden*, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Jonathan Coburn ("Coburn"), a state prisoner represented by Clarence Rauch Wise,

Esquire, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter

comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for

a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 12.)

Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Coburn was advised of the summary

judgment and dismissal procedures and the possible consequences if he failed to respond adequately

to the respondent's motion. (ECF No. 20.) Coburn responded in opposition. (ECF No. 20.) Having

carefully considered the parties' submissions and the record in this case, the court concludes that the

respondent's motion for summary judgment should be granted and Coburn's Petition denied.

**BACKGROUND**

Coburn was indicted in January 2007 in Dorchester County for murder (07-GS-18-0163) and

assault and battery with intent to kill ("ABWIK") (07-GS-18-0164). (App. at 243-48, ECF No. 13-1

at 244-49.) Coburn was represented by Timothy Clay Kulp, Esquire, and on July 14, 2008 pled

guilty as charged. (App. at 83-98, ECF No. 13-1 at 84-99.) A sentencing hearing was held on July

17, 2008, at which time the circuit court sentenced Coburn to thirty years' imprisonment for murder

and twenty years' imprisonment for ABWIK, both sentences to be served concurrently.  (App. at 112-13, ECF No. 13-1 at 113-14.)

Coburn timely appealed and continued to be represented by Timothy Clay Kulp, Esquire. (ECF No. 13-2 at 3.)  On October 8, 2008, the South Carolina Court of Appeals issued an order dismissing Coburn's appeal "for want of any showing that there is an issue preserved for appellate review" pursuant to South Carolina Appellate Court Rule 203(d)(1)(B)(iv).  (ECF No. 13-3.)  The remittitur was issued October 27, 2008.  (ECF No. 13-4.)

Coburn filed a *pro se* application for post-conviction relief ("PCR") on June 12, 2009 in which he alleged ineffective assistance of counsel in that counsel incorrectly advised him with regard to his eligibility for good time credits.  (Coburn v. State of South Carolina, 09-CP-18-1636; App. at 16-22, ECF No. 13-1 at 17-23.)  The State filed a return.  (ECF No. 13-5.)  Coburn, through counsel James A. Brown, Jr., Esquire, filed an amended PCR application on February 26, 2010 in which he alleged the following:

Ground A    Applicant was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 14 of the South Carolina Constitution and South Carolina law by trial counsel's failure to provide proper advice regarding the amount of time to be served regarding the charges to which the applicant pled guilty.

Ground B    Applicant was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 14 of the South Carolina Constitution and South Carolina law by trial counsel's failure to properly advise the applicant regarding the law concerning the felony murder rule, the inference of malice and the offense of voluntary manslaughter.

*CPJG*

(App. at 23-26, ECF No. 13-1 at 24-27.)  On March 4, 2010, the PCR court held an evidentiary

hearing at which Coburn appeared and testified.  (App. at 115-239, ECF No. 13-1 at 116-240.)  By

order filed June 24, 2011, the PCR judge denied and dismissed with prejudice Coburn's PCR

application.  (App. at 2-13, ECF No. 13-1 at 3-14.)  Coburn, through counsel, filed a motion to

withdraw the order denying post-conviction relief.  (App. at 27-28, ECF No. 13-1 at 28-29.)

Additionally, Coburn filed a motion to alter or amend judgment pursuant to SCRCP Rule 59(e).

(App. at 29, ECF No. 13-1 at 30.)  The PCR court filed an order on September 15, 2011 denying

Coburn's motion.  (App. at 15, ECF No. 13-1 at 16.)

Coburn appealed.  In his PCR appeal, Coburn continued to be represented by James A.

Brown, Jr., Esquire, who filed a petition for a writ of certiorari on Coburn's behalf that presented

the following issue:

> Does a criminal defendant's reliance upon erroneous advice from trial counsel
> regarding the eligibility for good time credits for a charge of murder entitle the
> defendant to post-conviction relief?

(ECF No. 13-7 at 2.)  The State filed a return.  (ECF No. 13-8.)  On October 3, 2012, the South

Carolina Supreme Court denied Coburn's petition for a writ of certiorari.  (ECF No. 13-9.)  The

remittitur was issued October 23, 2012.  (ECF No. 13-10.)  This action followed.

### FEDERAL HABEAS ISSUES

Coburn raises the following issues in his federal petition for a writ of habeas corpus:

**Ground One:**  Ineffective assistance of counsel in violation of Sixth and Fourteenth
Amendments to the Constitution of the United States of America and Article I, sec.
14 of the Constitution of the State of South Carolina.
**Supporting Facts:**  Trial counsel provided advised [*sic*] the petitioner that he would
be eligible for release after he served 85% of the 30 year[] sentence for murder.  The
Petitioner had specifically requested this advice.  Based upon this advice the
Petitioner made his decision to enter the guilty plea.  The advice was not correct



because under South Carolina law the Petitioner will have to serve day for day the entire 30 [year] sentence for murder.  But for trial counsel['s] deficient advice, the Petitioner would not have entered a guilty plea.

**Ground Two:**  Ineffective assistance of trial counsel.
**Supporting Facts:**  Trial counsel did not thoroughly investigate the facts of this case to determine if Petitioner actually shot the deceased.  The bullet wound to the deceased is on the left side of her head slightly above the left ear.  This shot would have been virtually impossible for the Petitioner to have inflicted as he was standing on the passenger side of the automobile when he fired the pistol at Mr. Bryant.  Witnesses testified as to hearing more than 2 shots, but petitioner only fired his pistol twice.  Trial counsel failed to examine the interior of the SUV to determine if what appears in the pictures to be a bullet hole on the inside passenger door was in fact a bullet hole.  Trial counsel failed to interview Keith Bryant to determine why he believed that Lisa Thompson was alive when Mr. Bryant fled the scene.  Mr. Bryant's statement to the officer at the hospital indicated that Mr. Bryant thought Lisa Thompson was still alive when Mr. Bryant left t[he] scene.

**Ground Three:**  Ineffective assistance of counsel in the post conviction relief petition hearing.
**Supporting Facts:**  Counsel at the post conviction relief hearing only raised the issue of whether trial counsel properly advised Petitioner as to how much time he would serve on a 30 year[] sentence for murder.  Post conviction relief counsel did not raise the issue of whether trial counsel was effective in investigating the facts of the case.  The errors in failing to investigate the case are fully set forth in [the Supporting Facts of Ground Two], above.

(ECF No. 1 at 5-8.)

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible



evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56©), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.    **Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000); <u>see also</u> <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011); <u>Humphries v. Ozmint</u>, 397 F.3d 206 (4th Cir. 2005); <u>McHone v. Polk</u>, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 131 S. Ct. at 786 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. <u>Id.</u> at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. <u>See id.</u> at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner



must show that there was no reasonable basis for the state court to deny relief.  <u>Id.</u>  Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court.  <u>Id.</u> at 786.  "If this standard is difficult to meet, that is because it was meant to be."  <u>Id.</u>  Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  <u>Id.</u> (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), <u>abrogated on other grounds by</u> <u>United States v. Barnette</u>, 644 F.3d 192 (4th Cir. 2011); <u>see also</u> <u>In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").  To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim."  <u>Longworth v. Ozmint</u>, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted).  Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them.



Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.    Summary Judgment Motion**

**1.    Ineffective Assistance of Counsel Generally**

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th



Cir. 2000).  To establish the prejudice prong of the <u>Strickland</u> test, a habeas petitioner who pled

guilty must show " 'that there is a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial.' "[1] <u>Id.</u> (quoting <u>Hill v. Lockhart</u>, 474

U.S. 52, 59 (1985)) (discussing the <u>Strickland v. Washington</u> standard to establish ineffectiveness

of counsel in the context of a guilty plea).

The United States Supreme Court has cautioned federal habeas courts to "guard against the

danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d)."

<u>Harrington</u>, 131 S. Ct. at 788.  The Court observed that while " '[s]urmounting <u>Strickland</u>'s high bar

is never an easy task[,]' . . . [e]stablishing that a state court's application of <u>Strickland</u> was

unreasonable under § 2254(d) is all the more difficult." <u>Id.</u> (quoting <u>Padilla v. Kentucky</u>, 130 S. Ct.

1473, 1485 (2010)).  The Court instructed that the standards created under <u>Strickland</u> and § 2254(d)

are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id.</u>

(citations omitted).  Thus, when a federal habeas court reviews a state court's determination

regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions

were reasonable.  The question is whether there is any reasonable argument that counsel satisfied

<u>Strickland</u>'s deferential standard." <u>Id.</u>

Although the Supreme Court has held that a decision containing a reasoned explanation is

not required from the state court, in the case at bar this court has the benefit of the PCR court's

---

[1] The court observes that the United States Supreme Court recently addressed the prejudice prong of the <u>Strickland</u> test where the plea offer has lapsed or been rejected due to counsel's deficient performance. <u>Missouri v. Frye</u>, 132 S. Ct. 1399 (2012); <u>Lafler v. Cooper</u>, 132 S. Ct. 1376 (2012).  However, the Court reaffirmed that the <u>Hill</u> analysis continues to apply to cases "where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial." <u>Frye</u>, 132 S. Ct. at 1409.



written opinion, certiorari review of which was denied by the South Carolina Court of Appeals. <u>See</u>, <u>e.g.</u>, <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the <u>Strickland/Hill</u> test in determining that no Sixth Amendment violation occurred.

### 2.    Ground One:  Sentencing Advice

Coburn first argues that plea counsel was ineffective in improperly advising him that he would be eligible for release after he served eighty-five percent of the thirty-year sentence for murder rather than advising him that he would have to serve the thirty-year sentence day for day.  Coburn alleges that but for plea counsel's deficient advice, he would not have entered a guilty plea.  This ground was presented to and rejected by the PCR court.[2]

At the PCR hearing, both Coburn and plea counsel testified that plea counsel erroneously advised Coburn that if Coburn pled guilty to murder he would only be required to serve eighty-five percent of his sentence before becoming eligible for release when, in actuality, Coburn was required to serve the entire thirty-year sentence day for day.  Coburn also testified that had he known that he

---

[2] As argued be the respondent, to the extent that Coburn alleges in this ground that counsel was ineffective in violation of the South Carolina Constitution, such a claim does not constitute a cognizable federal claim.  <u>See</u> 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.");  <u>Hinman v. McCarthy</u>, 676 F.2d 343, 349 (9th Cir. 1982);  <u>see</u> <u>also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").



would have to serve his entire sentence, he would not have pled guilty and would have insisted on going to trial.

Plea counsel testified that Coburn expressed concern about serving the least amount of time. Plea counsel stated that although he advised Coburn that he would be eligible for release after serving eighty-five percent of his sentence, he also advised Coburn that release would be decided by the Department of Corrections based upon Coburn's disciplinary record and other factors and that Coburn could serve the full thirty years. Stated differently, plea counsel indicated that early release was a possibility but that Coburn understood that he could serve the entire thirty years. Further, plea counsel stated that he pursued plea negotiations with the solicitor's office at every opportunity because he wanted to minimize Coburn's sentence since Coburn was facing life without parole. Plea counsel testified that he sought a plea to voluntary manslaughter because of its lesser punishment and the parole eligibility benefit was implied. Testimony revealed that Coburn was aware that thirty years was the minimum sentence for a murder conviction and that he could receive life without parole. Testimony also revealed that there were several concerns in this case associated with the guilty plea including the possibility of receiving a sentence of life without parole and parole eligibility. Coburn testified that he would not have pled guilty if he had known that he would not be eligible for release after serving twenty-five and a half years. While plea counsel testified that it was a bit amazing to him that someone would be concerned with the possibility of serving a few years less than thirty years rather than the full thirty years, Coburn indicated that it was important because of his mother's health and his father's age.

In considering this claim, the PCR court found that if plea counsel advised Coburn that he would be eligible for parole after serving eighty-five percent of his sentence, such advice was



"clearly incorrect." (App. at 8, ECF No. 13-1 at 9.) Therefore, the focus of the PCR court order was

whether Coburn could satisfy the second prong of the <u>Strickland/Hill</u> test, which requires

demonstrating " 'that there is a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial.' " <u>Burket</u>, 208 F.3d at 189 (quoting

<u>Hill</u>, 474 U.S. at 59). In rejecting Coburn's claim, the PCR court considered the testimony presented

and found that Coburn "failed to establish credible evidence of prejudice such that he would have

insisted on going to trial but for Counsel's mistaken advice." (App. at 10, ECF No. 13-1 at 11.)

Specifically, the PCR court found as follows:

> In the present case, Applicant acknowledged that he understood that his sentence could range from a minimum sentence of thirty years up to a life sentence as a result of his plea to Murder. Applicant even understood that the twenty year sentence for ABWIK could be consecutive. The plea carried no negotiations or recommendations as to sentence. Given the distinct charge of ABWIK, Applicant actually faced greater than a life sentence if the two sentences were given consecutively. Therefore, Applicant's misunderstanding regarding parole eligibility affected only the minimum sentence he believed he would face. . . .
>
> Further, while Counsel advised that parole was a possibility, Counsel clearly advised that actually being paroled prior to the service of the entire sentence was not guaranteed. Pursuant to this advice, Applicant understood that he could serve the entire thirty year sentence actually imposed. While Applicant may have pled under the hope of receiving the minimum sentence (understanding that up to life was possible) and under the hope that he could be paroled if he received the minimum sentence (understanding that he may not be paroled at all), Applicant clearly understood that these minimums were not assured as a result of his plea. <u>See Wolfe v. State</u>, 326 S.C. 158, 485 S.E.2d 367 (1997) (Wishful thinking does not equate with misapprehension as to sentence). Applicant's assertion that he thought he would receive 25 years and 5 months would only be applicable to the minimum sentence, a sentence he was not assured of receiving, and even if he received it, he may never be paroled. Therefore, it strains credulity to suggest that if he had been told that he was, not possibly but in fact, facing 30 years to life day-for-day (plus twenty years for ABWIK), Applicant would have decided against accepting the plea. <u>See Roscoe v. State</u>, 345 S.C. 16, 21, 546 S.E.2d 417, 419 (2001). <u>Accord Manley v. United States</u>, 588 F.2d 79, 82 (4th Cir. 1978) (holding "a mistake of a few years in advice about the length of what would otherwise be a long term would not constitute ineffectiveness of counsel").



While Applicant naturally had a strong desire for the shortest sentence possible, it is manifest from Counsel's advice and Applicant's understanding that he felt this end was most likely accomplished through a plea, not through a trial. This finding is compounded by the overwhelming evidence Applicant would face at trial. Lisa was killed and Bryant injured during the course of an admitted armed robbery, a robbery planned well in advance and executed again upon failure of the first attempt. During his plea, Applicant abandoned his feeble claim at self-defense outlined in his written statement, and at PCR hearing, Applicant expressly denied a self-defense claim. Counsel stated that he discussed various aspects of the case as it would likely play out at jury trial. Counsel considered defenses and the lesser-included offense of Voluntary Manslaughter. Based on this review, Counsel reported that trial carried a high risk of life imprisonment with little likelihood of a minimum sentence of thirty years; the guilty plea would hopefully avoid a life sentence and increase the likelihood of a lower sentence in that range, possibly even the minimum of thirty years. Counsel stated that the evidence was of concern to him in rendering his advice to plead guilty. Increasing the odds of avoiding a life sentence was paramount in Counsel's advice, and the decision was left to Applicant following thorough discussion of the evidence and avenues for defense.

(App. at 8-10, ECF No. 13-1 at 9-11) (internal record citations and footnote omitted).

In response to the respondent's motion, Coburn, relying on state law, appears to argue that the PCR court erred because Coburn's uncorroborated testimony alone is sufficient to establish prejudice. Upon thorough review of the parties' briefs and the record in this matter, the court finds that Coburn cannot demonstrate that the PCR court unreasonably misapplied clearly established *federal* law as decided by the United States Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. For all of the reasons discussed by the PCR court, Coburn has failed to establish that he was prejudiced and that, but for counsel's errors, he would not have pled guilty but would instead have



insisted on going to trial.  Coburn has not shown that the PCR court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 131 S. Ct. at 785.

### 3.    Grounds Two and Three: Failure to Investigate

#### a.    Allegations Against PCR Counsel

In Ground Two, Coburn alleges that plea counsel was ineffective in failing to thoroughly investigate the facts of the case to determine whether Coburn actually shot the deceased.  In Ground Three, Coburn argues that PCR counsel was ineffective in failing to raise Ground Two during Coburn's PCR proceedings.  To the extent that Ground Three is presented as an independent or free-standing claim, such a claim is not cognizable in federal habeas proceedings.  See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); see also Martinez v. Ryan, 132 S. Ct. 1309, 1320 (2012) (stating that "while § 2254(i) precludes Martinez from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop Martinez from using it to establish 'cause' for an otherwise procedurally defaulted ineffective assistance of trial counsel claim).

The parties appear to agree that Ground Two is procedurally defaulted as it was not presented to the state courts.  Therefore, Ground Two is procedurally barred unless Coburn can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  The court will therefore first consider whether Coburn's allegations in Ground Three are sufficient to excuse his procedural default of Ground Two.

Page 14 of  19



b.    **Martinez v. Ryan**

Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims. See Coleman, 501 U.S. at 752. However, in Martinez the United States Supreme Court established a "limited qualification" to the rule in Coleman. Martinez, 132 S. Ct. at 1319. The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. In describing its holding in Martinez, the Supreme Court has recently stated that

> [w]e . . . read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (citing Martinez, 132 S. Ct. at 1318-19, 1320-21); see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to require the following: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under Strickland, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice").

Therefore, to excuse the procedural default of his claim that trial counsel was ineffective in failing to thoroughly investigate the facts of the case to determine whether Coburn actually shot the deceased, Coburn must "show that [PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability

that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter."[3] Sexton, 679 F.3d at 1157; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. 668, 687 (1984) (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) his counsel was deficient in his representation, *i.e.* that counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) he was prejudiced as a result).

The crux of Coburn's position appears to be that his allegation that plea counsel was ineffective in failing to thoroughly investigate the facts of the case to determine whether Coburn actually shot the deceased is a substantial claim, and therefore, PCR counsel was ineffective in failing to present it. Coburn argues that this position is supported by (1) his plea colloquy; (2) the surviving victim's statements; and (3) a forensic examination report that federal habeas counsel sought and obtained from a forensic scientist and reconstructionist, utilizing information that federal habeas counsel states was available to defense counsel. Specifically, Coburn alleges that he was never asked in his plea colloquy whether he knew he shot the deceased victim; he was asked only if he knew she was killed by a single shot to the head and admitted firing two shots. In the forensic examination report, the forensic examiner opines the following:

1.      It has not be reliably established whether a single firearm was used to shoot both victims in this case.

---

[3] In light of the United States Supreme Court's recent decision in Trevino, the court concludes that the third and fourth elements discussed above are met in South Carolina and observes that the Respondent does not argue otherwise.

2.     The surviving victim, Keith Bryant, likely handled and discharged a firearm with his left hand on the evening that he was attacked.

3.     Victim Lisa Thompson was shot from the driver's side of the vehicle through an open window, and subsequently fell in to her final resting position across the center console.

4.     Reconstruction efforts in this case were substandard if not negligent with respect to establishing the total number of shots fired at the scene; the potential number of shooters; and the positions of known shooters.

(ECF No. 20-1 at 4.) Coburn argues that "[t]he assumption by all parties has always been that when [Coburn] fired into the SUV from the passenger side he struck Ms. Thompson with the bullet that grazed the cheek of Mr. Bryant." (Petr.'s Response Opp'n Summ J. at 7, ECF No. 20 at 7.)

Applying Martinez to the record and Coburn's arguments, the court concludes Coburn cannot satisfy Martinez's limited exception. Upon review of the record, including the plea colloquy and the transcript of the PCR proceedings, as well as the additional evidence submitted by Coburn in support of this argument, the court finds that Coburn cannot demonstrate that his claims in Ground Two are substantial claims of ineffective assistance of plea counsel; that PCR counsel was objectively unreasonable in failing to raise them; and that, but for PCR counsel's errors, there is a reasonable probability that Coburn would have received relief on his claim that plea counsel was ineffective in his investigation. This finding is further supported by plea counsel's testimony at the PCR hearing. Plea counsel agreed that there were many complicated factors in this case that he and Coburn's parents examined to try to develop any defense, plausible or implausible. (App. at 175, ECF No. 13-1 at 176.) In discussing the rounds that were fired, plea counsel explained:

> Descriptions of [the numbers of rounds fired] varied. There was a report of just Jonathan committed to two rounds being fired. I don't recall that the weapon that was found had any rounds in it, if I'm correct in that. But Mr. Bryant described a pop sound versus a more descriptive sound that would suggest another gun. I don't think that, as hard a job as they have, but I don't think the police did a very triple A



job on the crime scene of the car as far as tracking and accessing the trajectory of the bullets that were fired. I would have to go back and look.

We had based upon, uh, our investigation of, – well, following my meeting with the medical examiner, I was very interested in the determination of the bullet weight that was recovered from the victim's body. If it exceeded that which is usually the grain weight of a .22 caliber pistol which was recovered, then it would suggest the possibility of another gun. It would suggest wide open and speculating a misfire of Mr. Bryant and potentially a round expended from a weapon possessed by the co-Defendant, Mr. Payton or some other sort of explanation here in the [midst] of all the confusion in an attempt to say that possibly, in short, if that weapon weighed 90 grains or 110 grains, it didn't come from the gun that Jonathan had.

And he would therefore be led, considering that the forensic testimony regarding the wound to Mr. Bryant has been consistent with a 22 round, then he would be in the position of contributing to that. But the grain weight turned out to be the grain weight of a 22.

(App. at 175-76, ECF No. 13-1 at 176-77.) In the face of this testimony, the court cannot say that Coburn had a substantial claim that plea counsel's representation was objectively unreasonable or that PCR counsel was ineffective in failing to raise such a claim. Therefore, he cannot establish cause under Martinez excusing the procedural default of Ground Two.

### RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 12) be granted.

_Paige J. Gossett_
UNITED STATES MAGISTRATE JUDGE

January 13, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

Page 18 of 19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).